United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE M.,[1]<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, et al.,<br>Defendants. | Case No. 25-cv-04523-NW<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 18, 23 |

Plaintiff Stephanie M. seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Title II of the Social Security Act. ECF No. 18. The Commissioner cross-moves to affirm. ECF No. 23.

This case has been pending for more than 13 years, since July 2013. AR 201–12. The record includes reports from 11 treating physicians and consultative examiners between October 25, 2013 (AR 418–25) and February 20, 2020 (AR 1831–40). But none of the providers who submitted reports had an opportunity to consider the fact that Plaintiff began working in October 2020 and has held that position through at least April 2024. *See* AR 888–89, 1205, 1310–12. As this development may affect assessments of Plaintiff's abilities and limitations, remand is necessary to allow the ALJ an opportunity to further develop the record, including but not limited to, obtaining new opinions as appropriate and allowing Plaintiff an opportunity to submit more recent medical records.

[1] Partially redacted pursuant to Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

The Court therefore GRANTS IN PART Plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the case for further proceedings.

## I. BACKGROUND

### A. Relevant Medical Evidence[2]

#### 1. Treating Physicians

The following treating providers submitted mental impairment questionnaires: Marriage and Family Therapist Intern ("MFTI") Patricia Jones and Lesleigh Franklin, Ph.D.; Amrit Saini, M.D. and Clifton Der Bing, Ph.D.; and Licensed Marriage and Family Therapist ("LMFT") Carlos Ponce.

##### a. Amrit Saini, M.D., and Clifton Der Bing, Ph.D.

Dr. Saini and Dr. Der Bing treated Plaintiff every two weeks since April 6, 2015. AR 658; *see* AR 735–813 (March 25, 2015–September 16, 2016 treatment notes). They completed a mental impairment questionnaire on July 27, 2015. AR 658–62.

Drs. Saini and Der Bing diagnosed Plaintiff with major depressive disorder and panic disorder. AR 658. Their clinical findings included "low grooming and hygiene, poor eye contact, incoherent speech, passive cooperation, mood – anxious, depressed and irritable, psychomotor retardation, [and] recurring suicidal ideation." *Id.* They indicated that Plaintiff's conditions were expected to last at least twelve months; Plaintiff was not a malingerer; and her impairments were not caused by substance intoxication, dependence, or withdrawal. *Id.* They opined that Plaintiff could manage funds in her own best interests and that Plaintiff did not have a low IQ or reduced

---

[2] In addition to the treating and examining physicians discussed herein, the record includes opinions by two non-examining physicians, P.M. Balson, M.D., and Margaret Pollack, Ph.D. AR 74–83 (Balson); AR 97–104 (Pollack); *see* AR 958 (summarizing Balson and Pollack opinions). As the ALJ did not rely on those opinions (*see* AR 827–68), the Court does not discuss them here.

The record also includes an opinion by consultative examiner Paul Martin, Ph.D. AR 1589–94. Although the ALJ afforded Dr. Martin's opinion partial weight (AR 853–4), neither Plaintiff nor the Commissioner challenges this assessment in their briefs. The Court therefore does not discuss that opinion here.

United States District Court
Northern District of California

intellectual functioning. *Id.* They further stated that "[p]anic makes [Plaintiff] physically weak" and "[d]epression aggravates insomnia and poor physical energy." *Id.*

According to Drs. Saini and Der Bing, Plaintiff's impairments would cause her to miss more than four days of work per month. AR 658. They further opined that Plaintiff had several "marked" impairments, including her ability to remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; set realistic goals or make plans independently of others; maintain socially appropriate behavior; and travel in an unfamiliar place. AR 660–61; *see* AR 660 ("Marked indicates the patient has a substantial loss of ability to function and is unable to perform the activity on a sustained basis in a 5 day a week, 8 hour a day, normal work setting.").

They also indicated that Plaintiff was extremely impaired in her ability to sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; understand, remember, and carry out detailed instructions; deal with stress of semiskilled and skilled work; interact appropriately with the general public; and use public transportation. AR 660–61; *see* AR 660 ("Extreme means the patient retains no useful ability to function in the queried area, and cannot perform this activity at all in a regular work setting.").

Drs. Saini and Der Bing identified the following reasons why Plaintiff "would have difficulty working at a regular job on a sustained basis":

> [Plaintiff] has history of emotional and physical trauma causing high resting anxiety and numbness. Trauma has caused hypervigilance and high emotional reactivity with high social anxiety and intolerance. She has chronic insomnia and sleep apnea syndrome is being ruled out. Patient has recurring suicidal ideation.

AR 662.

**b. Patricia Jones, MFTI, and Lesleigh Franklin, Ph.D.**

Patricia Jones, MFTI had weekly, 50-minute sessions with Plaintiff between September 2014 and March 2015. AR 570–92, 653. On July 20, 2015, Jones, supervised by Lesleigh Franklin, Ph.D., completed a mental impairment questionnaire. AR 653–57.

Jones diagnosed Plaintiff with major depressive disorder and generalized anxiety. AR 653. Jones' clinical findings described Plaintiff as "tearful, tired, poor concentration. She complains of headaches, dizziness, and shakiness. She is pessimistic and perseverative." *Id.* Jones expected Plaintiff's conditions to last at least twelve months and did not find Plaintiff to be a malingerer. *Id.* Jones opined that Plaintiff could manage funds in her own best interests and that Plaintiff did not have a low IQ or reduced intellectual functioning. *Id.* Jones anticipated that Plaintiff would miss more than four days of work per month. *Id.*

Jones opined that Plaintiff was markedly impaired in her ability to remember work-like procedures; maintain attention for two hour segments; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; interact appropriately with the general public; and maintain socially appropriate behavior. AR 654, 656.

Jones also indicated that Plaintiff was extremely impaired in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; deal with normal work stress; deal with stress of semiskilled and skilled work; and travel in an unfamiliar place. AR 654, 656.

In addition, Jones opined that Plaintiff would have four or more repeated episodes of decompensation within a 12-month period, each of at least two weeks duration. AR 656. Jones explained that

> [a]t least 2-3 times per week, [Plaintiff] describes having anxiety attacks where she cries, becomes nervous and fearful, and cannot function. She has trouble doing simple tasks, like making dinner, and with getting out. [Plaintiff] has anxiety on her way to her therapy appointments and she spends half her sessions in tears.

AR 656.

Jones identified the following reasons why Plaintiff "would have difficulty working at a regular job on a sustained basis":

> [Plaintiff] struggles to get out of bed without the motivation of a friend. She came to all appointments with an escort and still cried the entire way to the appt. When she tried to come to an appointment on her own, she had a "meltdown" at the Bart station. By "meltdown," [Plaintiff] is describing an anxiety attack. Her heart races, she becomes nervous, agitated, and fearful.

AR 656.

**c. Carlos Ponce, LMFT**

Carlos Ponce, LMFT, treated Plaintiff once a week starting July 29, 2016 to December 13, 2017. AR 1526–67, 1632–83, 1742. LMFT Ponce appears to have submitted two mental impairment questionnaires dated May 11, 2018 and October 2, 2019.[3] AR 1740–41, 1742–47.

In his May 11, 2018 questionnaire, LMFT Ponce opined that "[Plaintiff] suffers from severe [post traumatic stress disorder ('PTSD')] and general anxiety. She also has bipolar features causing her to experience dramatic mood swings. She is mostly unable to regulate her emotions and can get frustrated very easily. She gets discouraged very often and tend[s] to isolate in frustration." AR 1741. In addition, Plaintiff would miss four or more days of work per month due to her impairments and/or need for medical treatment, and that Plaintiff would be precluded from performing a job more than 30% of an 8-hour workday, 5 days a week. *Id.* LMFT Ponce further noted that Plaintiff has difficulty attending appointments, as she "gets overwhelmed very easily and sometimes needs help to coordinate app[ointments]." *Id.* LMFT Ponce stated that the intensity, persistence, and limiting effects of Plaintiff's impairments were not expected to fluctuate

---

[3] Exhibit 30F consists of a facsimile cover page dated October 2, 2019 and page 5 of a questionnaire by LFMT Ponce. AR 1740–41. Exhibit 31F appears to be a complete mental impairment questionnaire by LMFT Ponce dated May 11, 2016. AR 1741–47. It is unclear why Exhibit 30F is incomplete.

over time, as she "may improve her functionality of life with the right medication but I doubt any dramatic change." *Id.*

LMFT Ponce's May 11, 2018 mental impairment questionnaire was based on Plaintiff's history and medical file, as well as his progress and office notes. AR 1742. LMFT Ponce diagnosed Plaintiff with PTSD, which he expected to last more than 12 months as "[Plaintiff] is improving at a [unintelligible] low pace. She might need to receive[] mental health services all her life." *Id.* In addition, Plaintiff's mental health impairments made her "extremely sensitive to pain." *Id.*

According to LMFT Ponce, Plaintiff is extremely impaired in the following areas: her ability to describe work activity to someone else; identify and solve problems; sequence multi-step activities; use reason and judgment to make work-related decisions; respond to requests, suggestions, criticisms, corrections, and challenges; keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; work at an appropriate and consistent pace; complete tasks in a timely manner; ignore or avoid distractions; change activities or work settings without being disruptive; work close to or with others without interrupting or distracting them; sustain an ordinary routine and regular attendance at work; work a full day without needing more than the allotted number or length of rest periods; set realistic goals; make plans independently of others; and be aware of normal hazards and take appropriate precautions. AR 1744–45. LMFT Ponce also found that Plaintiff is markedly impaired in her ability to follow one- or two-step instructions to carry out a task; ask and answer questions and provide explanations; recognize a mistake and correct it; handle conflicts with others; state one's own point of view; initiate and perform a known task; respond to demands; adapt to changes; manage psychologically-based symptoms; distinguish between acceptable and unacceptable work performance; and maintain personal hygiene and attire appropriate to a work setting. *Id.* LMFT Ponce's assessment was based on his finding that "[Plaintiff] suffers from marked emotional dysfunction which make[s] her [unintelligible] reactive and [unintelligible] by low frustration tolerance." AR 1746.

LMFT Ponce opined that Plaintiff would be absent from work four or more days per month

United States District Court
Northern District of California

due to her impairments and/or need for medical treatment, and that she would be precluded from performing a job more than 5% of an 8-hour workday, 5 days a week. *Id.* Plaintiff's symptoms also cause her to have difficulty with attending appointments, regularly taking medications, and consistently engaging with treatment because she "becomes overwhelmed very often and needs reminders for appointments." *Id.* LMFT Ponce did not know whether the intensity, persistence, and limiting effects of Plaintiff's impairments and symptoms would fluctuate over time. *Id.*

In addition, LMFT Ponce stated that "[Plaintiff] is unable to sustain a job at this particular time. [Plaintiff] can hardly accomplish her daily living skills." AR 1747.

**2. Consultative Examiners**

Four physicians performed consultative examinations of Plaintiff: Charles DeBattista, M.D.; Dionne Childs, M.S.; Lesleigh Franklin, Ph.D.; and Katherine Weibe, Ph.D.

**a. Charles DeBattista, M.D.**

Charles DeBattista, M.D. performed a consultative psychiatric examination of Plaintiff on October 25, 2013. AR 418–25. Dr. DeBattista did not review any medical records; Plaintiff was his sole source of information, whom he described as a "fair historian." AR 418.

Plaintiff's chief complaints were depression and anger. *Id.* Plaintiff stated that she had been depressed since at least high school and that "her mood is depressed virtually 90 percent of the time." AR 418–19. Plaintiff also "complain[ed] of anhedonia, fatigue, passive thoughts that life is not worth living," "initial and middle insomnia sleeping only three or four hours a night[,]" and "concentration and memory problems." AR 419. Plaintiff reported that she "feels hopeless about the future and worthless" and "has trouble making decisions." *Id.* Plaintiff also "describe[d] period [*sic*] of intense anxiety during which her chest feels tight" and "worrie[s] something bad is going to happen." *Id.*

Plaintiff "report[ed] a history of binge drinking" and "drinking about once a week on a 12 pack of beer and hard liquor." AR 419–20. Plaintiff also reported "us[ing] marijuana periodically." *Id.*

Dr. DeBattista's mental status examination showed that Plaintiff "was neatly and casually groomed." AR 420. Plaintiff "made good eye contact and good interpersonal contact with" Dr.

DeBattista, "was generally cooperative[,]" and "was able to volunteer information spontaneously." *Id.* Dr. DeBattista did not observe any psychomotor agitation or retardation. *Id.*; *see* AR 421 ("[Plaintiff's] speech had normal rate and tone."). Plaintiff "appeared genuine and truthful," and Dr. DeBattista found "no evidence of exaggeration or manipulation." AR 420. Plaintiff's mood was "depressed and irritable," her "affect [wa]s agitated," and she "admit[ted] to passive suicidal thoughts" as well as "cut[ting] on herself during stress." AR 421. Plaintiff's thought processes "was coherent and organized," her though content was "relevant and non-delusional," and "[s]he appeared to be of at least average intelligence." *Id.*

Dr. DeBattista diagnosed Plaintiff with alcohol abuse and depression not otherwise specified. AR 422. Dr. DeBattista opined that Plaintiff's "prognosis is good" and is "expected to improve in the next 6–12 months with active treatment." *Id.* According to Dr. DeBattista, Plaintiff could understand, remember, and carry out simple one- or two-step instructions and perform detailed and complex instructions. *Id.* Dr. DeBattista further opined that Plaintiff was moderately impaired in her ability to relate and interact with coworkers and the public; maintain concentration and attention, persistence, and pace; associate with day-to-day work activity, including attendance and safety; accept instructions from supervisors; maintain regular attendance in the work place and perform work activities on a consistent basis; and perform work activities without special or additional supervision. *Id.*

**b. Dionne Childs, M.S., and Lesleigh Franklin, Ph.D.**

Dionne Childs, M.S., supervised by Lesleigh Franklin, Ph.D., performed a consultative psychological examination of Plaintiff on April 30, 2014. AR 561–69.

Childs administered a number of tests and assessments, including a Beck Anxiety Inventory ("BAI"); Beck Depressive Inventory ("BDI"); clinical interview; Miller Forensic Assessment of Symptoms ("M-FAST"), which determines if an individual is prone to overstate or exaggerate symptoms; Mini Mental State Examination ("MMSE"), which screens for patients with more severe neuropsychological illness as a result of brain disease or physical trauma; Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"), a comprehensive evaluation of an individual's current neuropsychological status; and Weschler Abbreviated Scale



United States District Court
Northern District of California

Intelligence ("WASI"), a reliable brief measure of intelligence. AR 561, 563–65. Childs also reviewed Plaintiff's records from the Alameda County Medical Center – John George Psychiatric Pavilion and Tri-City Health Center, as well as Plaintiff's Department of Social Services Disability Evaluation. AR 561.

Plaintiff's test results revealed "notable problems with visuospatial abilities, immediate memory, delayed memory, attention and concentration, and executive functioning[.]" AR 565; *see* AR 568. Plaintiff's language was within normal range, and her MMSE score suggested no impairment. *Id.* Her M-FAST score "indicate[d] that she was not prone to overstate the severity of her symptoms." *Id.* In Childs' clinical judgment, "[Plaintiff] was generally telling the truth and putting forth adequate effort." *Id.*

Childs observed that Plaintiff had a pleasant disposition and appropriate eye contact. AR 563. Plaintiff "displayed a restricted range of affect," and "[h]er mood was depressed and tearful." *Id.* Plaintiff's "fund of knowledge, intelligence, and abstraction were low based on formal testing," and "[h]er judgment and insight were low to fair." *Id.* Childs opined that, "[b]ased on the behavioral observations made during the evaluation and the mental status exam, the reported assessment results appear[ed] to be a valid representation of [Plaintiff's] psychological and cognitive functioning." *Id.*

Childs diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features; post traumatic stress disorder ("PTSD"); panic disorder; borderline intellectual functioning; relational problems; occupational problems; and low income. AR 566.

**c. Katherine Weibe, Ph.D.**

On July 23, 2015, Katherine Weibe, Ph.D., conducted a consultative psychological evaluation of Plaintiff. AR 677–94. Dr. Weibe interviewed Plaintiff, reviewed her records, and administered several tests. AR 678, 682.

Dr. Weibe observed that Plaintiff was casually dressed, but that her hair was disheveled. AR 681. Plaintiff "reported 'picking' on her head" and had redness on her forehead. *Id.* She "evinced agitated fidgeting with her hands." *Id.* Dr. Weibe described Plaintiff as "cooperative and responsive in her assessment approach. *Id.* Plaintiff's "language evinced hostility," "affect

was restricted," and good eye contact. *Id.* Plaintiff "had depressive fatigue and reported insomnia" and showed memory problems for her personal history. *Id.*

Dr. Weibe opined that, "[b]ased on her presentation, reported history and previous WASI testing results, [Plaintiff's] pre-morbid IQ is considered likely within the borderline range." AR 682. Test results shows that Plaintiff is severely impaired in the areas of attention, concentration, and persistence is severely impaired; memory function; and visual/spatial abilities. AR 682–83, 690. Plaintiff is mildly impaired in language, sensory/motor ability, and overall intellectual functioning. AR 683, 690. She has mild to moderate impairment in executive functioning. AR 682, 690. Plaintiff has severe depression and anxiety. AR 684.

Dr. Weibe diagnosed Plaintiff with major depressive disorder, recurrent episode, severe; panic disorder; posttraumatic stress disorder; schizoid personality disorder with schizotypal personality traits, depressive personality traits, and avoidant personality traits; alcohol use disorder, mild; and borderline intellectual functioning by history. AR 690.

According to Dr. Weibe, Plaintiff "evinces cognitive functioning deficits that would impair her ability to attend to, remember, and follow through with directions and tasks in an employment situation." AR 690. Plaintiff's "combined psychiatric, personality, and cognitive functioning difficulties and reported pain problems make her unable to function effectively in a full-time job for likely two years, including should she not use any alcohol or substances." *Id.*

**d. Aparna Dixit, Psy.D.**

Consultative examiner Aparna Dixit, Psy.D., performed a psychological disability evaluation on February 4, 2019. AR 1731–39. Dr. Dixit performed behavior observations, a mental status examination, cognitive testing, and reviewed Plaintiff's records. AR 1731. Dr. Dixit also performed three tests: Weschler Adult Intelligence Scale-IV ("WAIS-IV"); Weschler Memory Scale-IV ("WMS-IV"); and Trail Making Test A and B ("TMT"). *Id.*

Dr. Dixit's WAIS-IV results showed that Plaintiff's Verbal Comprehension Index fell within the average range, and her Perceptual Reasoning Index, Working Memory Index, Processing Speed Index, and Full Scale IQ fell within the low average range. AR 1687. On the WMS-IV, Plaintiff's Auditory Memory Index and Visual Working Memory Index scores fell

within the average range which, according to Dr. Dixit, shows intact auditory and visual working memory functioning. *Id.* The TMT showed that Plaintiff had mild impairment in the areas of sequencing, organizing, and mental flexibility. *Id.*

Dr. Dixit diagnosed Plaintiff with unspecified mood disorder and alcohol abuse, in partial remission, based on Plaintiff's self-report. *Id.* Dr. Dixit opined that Plaintiff "will benefit from counseling, prognosis is good as [Plaintiff] has good insight, is treatment compliant, and is motivated to get better." *Id.* Dr. Dixit further opined that "[f]rom a cognitive and psychological standpoint, [Plaintiff] can understand, remember, and carryout simple instructions with no difficulty" and "will continue to have mild difficulty with remembering and carrying out detailed and complex tasks" and "dealing with the public." *Id.* In addition, Plaintiff has mild impairments in her ability to interact with co-workers and supervisors, as well as her ability to maintain pace and persistence for two-hour increments. *Id.* Plaintiff has no impairment or significant difficulty in her ability to engage in tasks requiring mental flexibility and maintain attention and concentration. *Id.*

**e. Theresa Phillips, Psy.D.**

Psychologist Theresa Phillips, Psy.D. performed a consultative psychological examination of Plaintiff on February 20, 2020. AR 1831–40. Dr. Phillips interviewed Plaintiff, who "was considered to be a good historian," and reviewed Plaintiff's medical records. AR 1831. Dr. Phillips also conducted a complete psychological exam and performed the following tests: Folstein Mini Mental State Exam ("MMSE"), Trails A & B, Wechsler Adult Intelligence Scale – 4th Edition, and Wechsler Memory Scale – 4th Edition. AR 1833–34. According to Dr. Phillips, the presenting problem was "Can [Plaintiff] manage their own funds?" AR 1832. Plaintiff's chief complaints were severe depression, severe anxiety, panic attacks, explosive rage, anger, and suicidal tendencies. AR 1831.

Dr. Phillips' mental status exam showed that Plaintiff's mood was anxious, but was otherwise unremarkable. AR 1832. According to the MMSE, Plaintiff's cognitive functioning fell within the normal range. AR 1834. Plaintiff "had no difficulty following simple [*sic*] and no difficulty in understanding and completing moderately complex directions." *Id.* Dr. Phillips

found that Plaintiff "presented with good effort and results appear to be a good estimate of the current level of functioning." *Id.*

Dr. Phillips diagnosed Plaintiff with unspecified depressive disorder; severe anxiety with panic attacks; unspecified disruptive, impulse control, and conduct disorder; alcohol use disorder – moderate – in stated remission; cannabis use disorder; phencyclidine use disorder – in stated remission. AR 1836. Dr. Phillips opined that Plaintiff had no limitations in the following areas: understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and deal with changes in routine work setting. AR 1836–37. Dr. Phillips further opined that Plaintiff was moderately impaired the following areas: difficulties maintaining social functioning; difficulties of concentration, persistence, and pace; repeated episodes of emotional deterioration in work-like situations; understand, remember, and carry out complex instructions; make judgment on complex work-related decisions; interact appropriately with the public, supervisors(s), and co-workers; and respond appropriately to usual work situations (attendance, safety, etc.) and changes in a routine work setting. *Id.* Lastly, Dr. Phillips opined that Plaintiff was mildly limited in restrictions of daily activities. AR 1836.

Based on the foregoing, Dr. Phillips concluded that Plaintiff is capable of handling funds in her own best interest. AR 1837.

**B. Procedural History**

On July 30, 2013, Plaintiff filed applications for Social Security Disability Insurance and supplemental security income benefits, initially alleging disability beginning January 31, 2007. AR 201–12. Plaintiff subsequently amended that date to June 30, 2010. AR 365. After a hearing, ALJ Nancy Lisewski issued an unfavorable decision finding Plaintiff not disabled. AR 17–37, 41–72. On May 30, 2017, after the Appeals Council denied review and the ALJ's decision became final, Plaintiff appealed to this Court. *See* AR 972–78; *Stephanie M. v. Berryhill*, 17-cv-03092-DMR (N.D. Cal.).

On June 26, 2017, Plaintiff filed an additional application for social security income, alleging disability beginning April 1, 2017. AR 1256–86; AR 1277.

On September 4, 2018, the Honorable Donna M. Ryu granted in part Plaintiff's motion for

summary judgment, denied the Commissioner's cross-motion for summary judgment, and remanded the action for further proceedings. AR 948–71.

On October 29, 2018, the Appeals Council remanded the case to ALJ David R. Mazzi "for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act." AR 979–82. The Appeals Council also noted that Plaintiff had "filed a subsequent claim for Title XVI supplemental security income disability benefits on June 26, 2017" and stated that "[t]he Appeals Council's action with respect to the current claims renders the subsequent claim duplicate." AR 981. The Appeals Council thus ordered the consolidation of Plaintiff's June 26, 2017 application for supplemental security income with Plaintiff's July 30, 2013 application, with instructions that the ALJ "consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims (20 C.F.R. 416.1452 and HALLEX I-1-10-10)." *Id.*

ALJ Mazzi held a hearing on November 13, 2019 and, on June 30, 2020, issued an unfavorable decision finding Plaintiff not disabled. AR 876–83; AR 984–1014. On January 24, 2023, the Appeals Council remanded the case back to an ALJ on grounds that the decision did not adequately: (1) "explain the finding that [Plaintiff] is able to perform other work at step 5 of the sequential evaluation"; (2) "adequately consider [Plaintiff's] residual functional capacity"; and (3) "consider the opinion evidence." AR 1015–21. The Appeals Council instructed the ALJ to

> [g]ive further consideration to [Plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, [the ALJ shall] further evaluate the opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927 and explain the weight given. As appropriate, the Administrative Law Judge may request the treating and nontreating sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of [Plaintiff's] representative in developing evidence from the claimant's treating sources.
>
> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify

> examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

AR 1018–19.

ALJ David LaBarre held a telephonic hearing on April 23, 2024. AR 884–912. Plaintiff attended and was represented by counsel. AR 830, 886. On June 7, 2024, ALJ LaBarre issued an unfavorable decision finding that Plaintiff had not been disabled since January 31, 2007. AR 827–68.

ALJ LaBarre determined that Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, posttraumatic stress disorder ("PTSD"), cluster B and C personality traits, borderline intellectual functioning, alcohol abuse, and marijuana abuse. AR 833.

ALJ LaBarre found that Plaintiff retains the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform simple, routine tasks involving simple work-related decisions and occasional workplace changes. She can have occasional interactions with co-workers that does not involve teamwork and no interaction with the general public except incidental interaction where the individual might direct someone to the nearest restroom or the nearest exit; and occasional interaction with supervisors. She would be absent once per month. With regard to concentration, persistence or maintaining pace, the claimant would be off task 10% of an 8-hour workday.

AR 837. A vocational expert ("VE") testified that a person with Plaintiff's RFC could perform other jobs existing in the economy, including laborer, stores; floor waxer; and machine packager. AR 857, 900–09.

On March 28, 2025, the Appeals Council denied review, thereby making ALJ LaBarre's decision final. AR 814–21. On May 28, 2025, Plaintiff appealed to this Court. ECF No. 1.

## II. LEGAL STANDARD

Under the Social Security Act, a claimant is considered "disabled" if they meet two

requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 1382c(a)(3)(A)-(C) (the analysis is substantially similar under Title II and Title XVI). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform their previous work and cannot, based on their age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," the claimant can still do his "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation modified). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* Simply put, "[i]n Social Security cases, federal courts 'are not triers of fact'," *M. L. v. Kijakazi*, No. 20-CV-07919-RS, 2023 WL 1927735, at *3 (N.D. Cal. Feb. 10, 2023) (citations omitted), and if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (citation modified). "Finally, [a district court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674

United States District Court
Northern District of California

F.3d at 1111. District courts have the power to enter a judgment, "upon the pleadings and transcript of the record," with or without remanding the complaint for a rehearing. 42 U.S.C. § 405(g).

**III. DISCUSSION**

**A. The ALJ's Weighing of Medical Evidence**

Plaintiff argues the ALJ erred in affording little weight to the opinions of her treating physicians. As explained in detail below, the Court agrees in part with Plaintiff that the ALJ did not articulate specific and legitimate reasons for discounting the opinions of Plaintiff's treating providers.

Those providers offered their opinions in 2015, 2018, and 2019. AR 653–57, 658–62, 1740–47. The record at that time supports the treating providers' opinions that Plaintiff had significant limitations in her ability to perform in the workplace. Indeed, Plaintiff did not work at all between 2008 and 2019. AR 1312.

But Plaintiff began working part-time in October 2020 and converted to full-time sometime thereafter. As none of the treating or examining providers had an opportunity to consider this fact, remand is necessary to further develop the record to account for changes that occurred after the last opinion was offered in February 2020.

**1. Legal Standard**

"For social security disability claims filed prior to March 27, 2017, an ALJ is required to assess medical opinions 'based on the extent of the doctor's relationship with the claimant.'" *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)). These relationships fell into one of three categories: treating physicians, examining physicians, and non-examining physicians. 20 C.F.R. § 404.1527(c). Treating physicians, "medical sources [who] treat or evaluate the claimant and have an ongoing treatment relationship with her," were afforded "substantial weight." *Woods*, 32 F.4th at 789. Opinions of examining physicians, "doctors who examine the claimant but do not have an ongoing relationship with her" were afforded greater weight than those of non-examining physicians, that is, "physicians who only review the record." *Id.* (citation modified). "Before an ALJ could disregard

the medical opinion of a treating physician, [the Ninth Circuit] required 'specific and legitimate' reasons for doing so, based upon substantial evidence in the record." *Cross*, 89 F.4th at 1214.

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)). For applications filed on or after March 27, 2017, "the former hierarchy of medical opinions—in which [courts] assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods*, 32 F.4th at 787. Under the revised regulations, the ALJ considers medical opinions using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(1)–(5).

**2. Analysis**

**a. Applicable Legal Standard**

As a preliminary matter, the Court considers whether the pre-March 27, 2017 or post-March 27, 2017 framework applies to the instant action.

Plaintiff filed her initial application for social security income on July 30, 2013. AR 201–12. She filed a subsequent application on June 26, 2017—approximately one month after the new framework went into effect. AR 1256–86; *see* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). ALJ LaBarre's decision addresses the 2013 and 2017 applications. AR 981 ("[T]he Administrative Law Judge will consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims (20 C.F.R. 416.1452 and HALLEX I-1-10-10).").

Both Plaintiff and the Commissioner apply the pre-March 2017 framework for assessing medical opinions without addressing why it applies to Plaintiff's June 26, 2017 application. ECF No. 11 at 5; ECF No. 23 at 8. The Court nevertheless agrees with that approach. The Social Security Administration's Hearing, Appeals, and Litigation Law ("HALLEX") Manual recognizes that "[a]djudicators occasionally have to consolidate a subsequent application(s) with a pending

application(s) when there are overlapping periods." HALLEX I-5-3-30, Revisions To Rules Regarding the Evaluation of Medical Evidence, 2017 WL 1362776, at *4; *see id.* (noting "this most often happens . . . when a case is remanded from Federal court and the claimant filed a subsequent application(s)"). Where, as here, "the subsequent application(s) is filed on or after March 27, 2017 and the pending application(s) is filed before March 27, 2017, adjudicators will apply the prior rules to the consolidated case." *Id.* Accordingly, Plaintiff's claims are subject to regulations in effect prior to March 27, 2017, that is, 20 C.F.R. § 404.1520c.[4]

**b. Saini/Der Bing, Jones/Franklin, and Ponce Opinions**

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for affording little weight to the opinions of treating providers Drs. Saini and Der Bing, MFTI Jones and Dr. Franklin, and LMFT Ponce. Each of these providers had direct contact with Plaintiff over a period of months and found that Plaintiff was disabled.

**i. "Check-the-Box" Forms**

The ALJ discounted the Saini/Der Bing and Jones/Franklin opinions because they "merely checked boxes on a form and the lines on the form allowing for an explanation were not supported by evidence and were inadequately completed." AR 848–49. These are not "specific and legitimate reasons" to discount their opinions. First, the ALJ failed to explain why the Saini/Der Bing and Jones/Franklin opinions were "inadequately completed." Second, "there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017). ALJs are therefore "not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)); *see Esparza v. Colvin*, 631 F.

---

[4] The outcome would be the same even under the post-March 2017 regulations. Irrespective of the length of their relationship with Plaintiff, all of Plaintiff's treating providers found significant limitations on Plaintiff's ability to function in the workplace.

App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes.") (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014)). As the ALJ did not cite any treatment notes that were inconsistent with the opinions, this is not a basis to afford their opinions less weight.

**ii. Plaintiff's Subjective Reporting**

The ALJ also discounted Saini/Der Bing and Jones/Franklin opinions because they were based on Plaintiff's subjective reporting. AR 849 (the Saini/Der Bing "assessment was based on a summary of [Plaintiff's] subjective complaints, diagnoses, and treatment without documenting any significant positive objective findings"); AR 848 ("[T]he explanations provided by Ms. Jones rely heavily on the claimant's subjective description of her symptoms, such as reported frequency of anxiety attacks and inability to perform even simple tasks."). Judge Ryu previously found that this was not a valid basis for the ALJ to discount these opinions:

> ALJ [Lisewski] wrote that the Jones/Franklin opinion was based on [Plaintiff's] subjective reporting, and that the marked and extreme limitations "are advocatory in nature, as they are not supported by the record." A.R. 29. It is inaccurate to suggest that the opinion was solely based on [Plaintiff's] subjective reporting. While the opinion includes descriptions of [Plaintiff's] own statements, the record reflects Jones's treatment relationship with [Plaintiff] and contains Jones's treatment notes. Those notes reflect 11 therapy sessions with [Plaintiff] from September 2014 through March 2015 at the East Bay Family Institute and ostensibly support Jones's July 2015 opinion. A.R. 570-592. The treatment notes reflect Jones's personal observations of [Plaintiff] over that seven-month period, including frequent crying, blunted affect, depression, anxiety, difficulty with "considering new possibilities of thinking," and hopelessness. *See id.* Jones discussed the same recurring issues with [Plaintiff] during those sessions, including negative thoughts, anger, irritability, anxiety, sadness, social isolation, hopelessness, and irrational thinking. *See, e.g.*, A.R. 571, 573, 575, 577, 579.
>
> Further, to the extent that the ALJ sought to imply that [Plaintiff's] reporting to Jones about her symptoms was not credible, there is nothing in the Jones/Franklin opinion or Jones's treatment notes that suggests that Jones or Dr. Franklin viewed [Plaintiff] as not credible. In fact, Jones and Dr. Franklin made findings in their opinion that [Plaintiff] was not a malingerer. A.R. 653. Elsewhere in the ALJ's opinion, she noted the existence of examining and treating source opinions that support [Plaintiff's] claim for benefits, but wrote "these opinions were based on the claimant's subjective reporting and numerous factors undermine the claimant's credibility concerning her

> reported symptoms and limitations." A.R. 27. She then discussed the facts that the record contained only "intermittent mental health treatment notes," that [Plaintiff] had experienced improvement in 2012 and 2013 after she started therapy and psychotropic medication but then stopped following up with treatment and stopped taking prescribed medication in 2013, that there were inconsistencies in the record that indicated that [Plaintiff] was an unreliable historian, and that [Plaintiff's] activities indicated a higher level of functioning than she claimed. A.R. 27-28. While these reasons are connected to the ALJ's assessment of [Plaintiff's] credibility, they are not sufficiently "specific and legitimate" to discount [Plaintiff's] treating providers' opinions, since, as noted above, the Jones/Franklin opinion was based on a seven-month treating relationship, and not just [Plaintiff's] own reporting.
>
> * * *
>
> ALJ [Lisewski] first discounted the Saini/Der Bing opinion as based on [Plaintiff's] subjective reporting, and wrote that the marked and extreme limitations "are advocatory in nature, as they are not supported by the record." A.R. 29. This is not a specific and legitimate reason to discount the opinion, because it ignores the actual observations of [Plaintiff] by Drs. Saini and Der Bing in the opinion itself, wholly unrelated to her reporting. These include [Plaintiff's] low grooming and hygiene, poor eye contact, incoherent speech, passive cooperation, anxious mood, depression, irritability, and psychomotor retardation. A.R. 658. Further, there are numerous clinical observations of [Plaintiff] in Drs. Saini and Der Bing's treatment notes, which reflect approximately 17 therapy sessions with Dr. Der Bing and five office visits with Dr. Saini over a six-month period. A.R. 735-806; *see, e.g.*, A.R. 765 (Saini: [Plaintiff] "seemed to be very guarded, irritable and sad. Affect was varying between sad, blunt, angry, irritable and frustrated."); 766 (Der Bing: "Initially, many tears were shed uncontrollably when talking about emotions in general"); 783 (Der Bing: "She initially presented as tense, often picking her [forehead] in scalp"). To the extent that the ALJ intended to suggest that the Saini/Der Bing opinion was entitled to less weight because [Plaintiff's] own reporting to her psychologist and psychiatrist was not credible, there is nothing in the opinion or those providers' treatment notes that indicates [Plaintiff's] lack of credibility.

AR 962–63, 965. ALJ LaBarre's decision offers no reason to deviate from Judge Ryu's findings.

**iii. Concentration, Persistence, and Pace**

The ALJ found that the Saini/Der Bing and Jones/Franklin opinions that Plaintiff was extremely or markedly impaired in concentration, persistence, and pace were "inconsistent with observations from treating and examining sources." AR 848–49. The fact that consultative treaters' assessments of Plaintiff's limitations related to concentration, persistence, and pace differs is not, in and of itself, grounds for rejecting the opinion of Plaintiff's treating providers.



United States District Court
Northern District of California

United States District Court
Northern District of California

*See Silvia F. v. Saul*, No. CV 18-9182-KK, 2019 WL 13071984, at *7 (C.D. Cal. Aug. 16, 2019) ("[T]he ALJ rejected [the treating physician's] opinions because they were contradicted by the opinions of the consultative and reviewing physicians. . . . Such contradictions alone are not sufficient to justify the rejection of a treating physician's opinion."). Moreover, Saini/Der Bing's and Jones/Franklin's opinions are supported by the record. *See* AR 740 ("Therefore she says she continues to experience low quality sleep, which negatively impacts her mood, concentration and . . . function[.]"); AR 769 ("Client said she continues to experience concentration difficulties and low energy, which may be due to dyssomnia."); AR 783 ("She mentioned that she continues to [unintelligible] headaches, some eye strain, and concentration difficulties (going from one task or hobby to the other)."); AR 785–86 ("She continues to have difficulty in concentration.").

**iv. Activities of Daily Living**

The ALJ determined that Saini/Der Bing, Jones/Franklin, and Ponce opinions are inconsistent with Plaintiff's activities of daily living. AR 849–50 (Saini/Der Bing and Jones/Franklin "opinions are also inconsistent with the claimant's normal activities of daily living (Exhibit 4F, p.3)."); AR 850 (LMFT Ponce's "opinion that [Plaintiff] has marked or extreme limitations in nearly all areas of functioning and can hardly accomplish her daily living skills is inconsistent with additional records including the assessments by two consultative examiners and by [Plaintiff's] admitted activities . . ."). Specifically, the ALJ cited evidence that Plaintiff can do household chores, cook, dress and bathe herself, shop, run errands, drive, handle bills and cash, read the news, and leave home alone.[5] AR 849–50.

But "the ALJ failed to explain or point to any evidence which shows that these activities are inconsistent with [Saini/Der Bing's, Jones/Franklin's, and Ponce's] opinions of Plaintiff's limitations; merely listing activities is insufficient." *Murillo v. Colvin*, No. 15-CV-01325-JSC, 2016 WL 777793, at *16 (N.D. Cal. Feb. 29, 2016) (citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)). "Absent an explanation, it is improper to assume that because Plaintiff performs limited tasks that [s]he does not deserve benefits or would have no difficulties in a work setting."

[5] With respect to these opinions, the ALJ did not cite Plaintiff's employment since 2021 as one of her activities of daily living.

*Id.* (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Indeed, as the Ninth "[C]ircuit has held, 'The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Walton v. Saul*, No. 3:18-CV-01267-JD, 2019 WL 5087590, at *2 (N.D. Cal. Oct. 10, 2019) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

**v. Inconsistencies with Examining Physicians**

The ALJ found that the Saini/Der Bing and Jones/Franklin opinion was inconsistent with examining physicians Drs. Dixit and Phillips, who found that Plaintiff had no or mild/moderate impairments in her work-related abilities. AR 849–50 ("At Dr. Dixit's exam in February 2019, [Plaintiff] reported that she had been on psychotropic medications for one year, and [Plaintiff] had stable findings that were no greater than mild to moderate in severity (Exhibit 29F). [Plaintiff's] subsequent consultative exam report by Dr. Phillips in 2020 continued to show that [Plaintiff] had no greater than moderate mental limitations based on mild to moderate medical signs documented by Dr. Phillip's evaluation (Exhibit 34F, p. 6-7)."). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The fact that Drs. Dixit and Phillips reached different conclusions is not, without more, a legitimate reason to reject the opinions of Dr. Saini, Dr. Der Bing, MFTI Jones, and Dr. Franklin, who, as treating physicians, are entitled to deference. *Id.* at 632–33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is still entitled to deference.") (citation modified). Moreover, courts have recognized that "mental status examinations [do not] capture the broader pattern of an individual's mental health disorder or its effect on the ability to function in a workplace." *Wendi D. v. SSA*, No. 24-CV-08207-RFL, 2025 WL 2373362, at *8 (N.D. Cal. Aug. 14, 2025) (citing *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996)).



United States District Court
Northern District of California

United States District Court
Northern District of California

**vi. Social Limitations**

As to the Saini/Der Bing opinion, the ALJ found that "[t]he opinion that [Plaintiff] has extreme social limitations is inconsistent with the record and [Plaintiff's] ability to maintain a long-term relationship with her partner and her ability to live with roommates with little mention of conflict (Exhibit 25E)." AR 849. But the record shows that Plaintiff has a history of isolating herself from her roommates. AR 418 ("She is currently living in what she describes as a toxic environment with her grandparents. She does not like living with them and they apparently do not like her living there either. As a result, she stays in her room all day and does not interact with anyone."); AR 666, 797 ("grandparents – ct lives with them, ct reported that sometimes she feels annoyed by their encouragement"); AR 795 ("CT also reported that social anxiety causes difficulty communicating effectively with future property owners/managers if needing to find new residency in the future. This is why living arrangements can be negatively impacted. CT said she experiences difficulties leaving her room or house and prefers to isolate from others, which negatively impacts daily activities and social relationships."). And while Plaintiff has been in a long-term relationship, it is her only meaningful relationship and, at times, causes her anxiety. AR 697 ("Her only real contact is her boyfriend . . ."); AR 785 ("She's trying to move out with her boyfriend in 2-3 months. She's still very anxious about the move and about how things will work out with him. Her boyfriend who accompanied her agrees with the anxiety of living together."). The fact that Plaintiff is able to maintain a single relationship does not undermine Drs. Saini and Der Bing's opinion that Plaintiff has extreme social limitations, particularly where the record also shows that Plaintiff self-isolates from her roommates, "was completely unattached to her family," and "had few friends growing up." AR 697. The record therefore supports Drs. Saini and Der Bing's opinion that Plaintiff has extreme social limitations.

Similarly, "[Plaintiff's] ability to go on camping trips without experiencing significant decompensation" does not undermine Drs. Saini and Der Bing's opinion. AR 849–50. If anything, Plaintiff's camping trip confirms that Plaintiff is unable to interact with others, as it made her "realize[] how much she hates being in 'civilization.'" AR 718.

* * *

For these reasons, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount Drs. Saini and Der Bing's opinion.

**vii. Internal Inconsistencies**

As to LMFT Ponce's opinion, the ALJ found that "Mr. Ponce's opinion is internally inconsistent because he opined [Plaintiff] would be off task more than 30% of the workday, but he also indicated [Plaintiff] would be off task 5% or less of the workday (Exhibits 30F, p. 2; and 31F, p. 5)." AR 850.

The ALJ failed to articular specific and legitimate reasons as to why LMFT Ponce's different opinions in May 2018 and October 2019 regarding the amount of time Plaintiff would be off-task (AR 1741, 1746) is an inconsistency that warrants affording LMFT Ponce's opinion less weight. Indeed, it is possible that LMFT Ponce's assessment of Plaintiff changed given the passage of time between the two opinions.

* * *

For these reasons, the ALJ erred in affording little weight to the Saini/Der Bing, Jones/Franklin, and Ponce opinions.

**c. DeBattista, Dixit, and Phillips Opinions**

Because the ALJ did not provide specific and legitimate reasons for discrediting the Saini/Der Bing, Jones/Franklin, and Ponce opinions, the ALJ thus erred in affording greater weight to the opinions of examining physicians Drs. DeBattista, Dixit, and Phillips that Plaintiff is at most only mildly to moderately impaired in her ability to perform work-related activities. *See Orn v. Astrue*, 495 F.3d 625, 632–33 (9th Cir. 2007) ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is still entitled to deference.") (citation modified).

**d. Wiebe**

The ALJ assigned little weight to the Wiebe and Childs/Franklin opinions as inconsistent with the evidence. AR 852.

**i. Plaintiff's Subjective Testimony**

The ALJ found that the Wiebe and Childs/Franklin opinions were based on Plaintiff's

subjective complaints, rather than objective findings. AR 851–52 (“852.

Dr. Wiebe’s “assessment was based on a summary of [Plaintiff’s] subjective complaints without referencing any significant positive objective findings to support the marked limitations.”

First, the ALJ’s finding that “[t]he assessment that the claimant has marked limitations is inconsistent with subsequent medical records documenting improvement of the [Plaintiff’s] depressive symptoms, well-controlled anxiety, and improved PTSD-related symptoms, as well as cooperative behavior with treating and examining sources” is

Judge Ryu rejected Plaintiff’s subjective reporting as a specific and legitimate reason to discount Dr. Wiebe’s opinion:

> ALJ [Lisewski] wrote that Dr. Wiebe’s opinion was based on [Plaintiff’s] subjective reporting, and that [Plaintiff] “is an unreliable historian.” A.R. 28. This is not a “specific and legitimate reason” to reject Dr. Wiebe’s opinion, because it inaccurately characterizes that opinion. Dr. Wiebe’s opinion was not solely based on an interview of [Plaintiff]. Dr. Wiebe also administered multiple tests and reviewed records from seven sources. A.R. 682

AR 969.

**ii. Activities of Daily Living**

ALJ LaBarre also found that Dr. Wiebe’s opinion was “contradicted by the weight of the evidence now of record, including [Plaintiff’] work at substantial gainful activity beginning in 2021 and normal activities of daily living.” AR 852. Plaintiff testified that in October 2020, she began working at Colma Cremation and Funeral Services, doing administrative work and assisting the funeral director. AR 888–89; *see* AR 1205 (“I returned to work in fall of 2020. Since that time I’ve been working close to full time as a family care associate at a funeral home. I currently work from 9–5 Mondays and Thursdays and 9:30–4:30 Wednesdays, Tuesdays and Fridays. My work functions are mainly administrative.”); *see also* AR 1310–12 (Plaintiff’s 2023 earnings amounted to $32,117.00). Plaintiff testified that “it’s mostly just me in the office[.]” AR 889.

This is a legitimate reason for affording Dr. Wiebe’s opinion less weight. “In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant’s ‘ability to work on a *sustained* basis.’” *Lester*, 81 F.3d at 833 (quoting 20 C.F.R. § 404.1512(a); emphasis in the original). “Occasional symptom-free periods—and even the

sporadic ability to work—are not inconsistent with disability." *Id.* Here, though, the record shows that Plaintiff had been working on a full-time basis for approximately three years by the time she testified at the April 23, 2024 hearing. Dr. Wiebe's opinion that Plaintiff's "combined psychiatric, personality, and cognitive functioning difficulties and reported pain problems make her unable to function effectively in a full-time job for likely two years, including should she not use any alcohol or substances" (AR 690) no longer appears to be true.

**iii. Medications**

The ALJ further found that "medical records after Dr. Wiebe's assessment indicate the claimant had not been using prescribed medications at the appropriate dosage (Exhibits 18F, p. 38)." AR 852. According to the ALJ, Plaintiff's "[p]sychotherapy records show the severity of [Plaintiff's] symptoms fluctuated, but she began experiencing some improvement in symptoms with medication, including stable mood, less severe periods of depression, and well-controlled anxiety (Exhibits 19F, p. 5; 20F; 24F, p. 8; 25F, p. 5; 27F, p. 2; and 28F, p. 15)." *Id.* The ALJ thus found that "[Plaintiff's] medical improvement due to her compliance with treatment undercuts Dr. Wiebe's opined work related limitations because Dr. Wiebe's work related limitations do not apply to [Plaintiff] when she is complaint with treatment in 2019 and 2020 (Exhibits 26F and 34F)." *Id.* But the ALJ cites no evidence that Plaintiff's symptoms sufficiently improved to the point that she is capable of working. And, as explained above, there is insufficient evidence in the record that Plaintiff's employment Colma Cremation and Funeral Services supports a finding that Plaintiff is not disabled.

Indeed, a September 2018 mental state assessment notes "[Plaintiff] feels medications are working as well as they can, anxiety indicated as well controlled but she continues to struggle with chronic sxs of moderate to severe depression, such as spending much time in bed. No significant improvement from increasing mirtazapine to 30mg qHS, will increase again." AR 1725. A March 2019 record states that, despite taking medication daily, Plaintiff continued to suffer from anxiety and depression:

> "not too good," continues spending most time in bed, "very depressed and anxious," reports being too depressed to formulate thoughts, feels foggy. Sleep at night varies, depends on how anxious she is, wakes

United States District Court
Northern District of California

> up anxious. Several panic attacks. Nightmares. Hard time eating in the morning. . . . Estimates 85-90% alone time, if she has a chance to be social avoids, "people are stressing me out."

AR 1722. As a result, her nurse practitioner increased her medication. AR 1723.

**iv. Alcohol and Cannabis Use**

The ALJ also found that "Dr. Wiebe's assessment did not adequately consider the effect that [Plaintiff's] alcohol abuse had on her positive mental status exam findings, but Dr. Wiebe does assert that [Plaintiff's] substance use did not contribute to [Plaintiff's] mental symptoms without offering any support for her statement." AR 853. But, as Judge Ryu found, "while Dr. Wiebe characterized [Plaintiff's] alcohol use disorder as mild, A.R. 690, she discussed her alcohol use at length in the opinion, A.R. 681, 688-689[.]" AR 969. The same was true about the Childs/Franklin opinion. AR 968 ("[T]he Childs/Franklin opinion does not ignore [Plaintiff's] use of alcohol and marijuana, as the ALJ suggests; the opinion addresses [Plaintiff's] binge drinking and use of marijuana, as well as her previous diagnoses of alcohol abuse and cannabis dependence.").

* * *

On balance, the ALJ did not err in affording Dr. Wiebe's opinion little weight. While not all of the ALJ's reasons are legitimate, the fact that Plaintiff has been able to maintain full-time work for several years clearly undermines Dr. Wiebe's opinion.

**e. Childs/Franklin Opinion**

The ALJ gave little weight to the Childs/Franklin opinion on grounds that is inconsistent with the evidence. AR 851–52.

First, the ALJ's finding that "[t]he assessment that the claimant has marked limitations is inconsistent with subsequent medical records documenting improvement of the [Plaintiff's] depressive symptoms, well-controlled anxiety, and improved PTSD-related symptoms, as well as cooperative behavior with treating and examining sources" is not a basis to discount the Childs/Franklin opinion for the same reasons stated above with respect to Dr. Wiebe's opinion. *See* § III(2)(d)(iii).

Second, the ALJ found that the "finding of cooperative behavior at [Plaintiff's]

examinations is inconsistent with marked limitation in interacting with others, as assessed by Ms. Childs and Dr. Franklin." AR 852. That Plaintiff exhibited cooperative behavior at a single examination is not evidence of a lack of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ cited treatment notes that discussed Ghanim's 'good eye contact, organized and logical thought content, and focused attention.' These observations of cognitive functioning during therapy sessions do not contradict Ghanim's reported symptoms of depression and social anxiety.").

Third, the ALJ cited the Childs/Franklin opinion as inconsistent with Plaintiff's activities of daily living. For the reasons stated above, this is not a basis to discredit the Childs/Franklin opinion. *See* § III(A)(2)(b)(iv), *supra*.

Accordingly, the ALJ erred in affording the Childs/Franklin opinion little weight.

**B. Further Development of the Record**

Plaintiff argues the Court should remand the action for an immediate payment of benefits. ECF No. 11 at 17–19.

A court has discretion to remand a case either for additional evidence and findings or to award benefits. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). In cases where the Social Security Administration ("SSA") erred in reaching its decision to deny benefits, § 405(g) permits the court to "revers[e] the decision of the Commissioner of Social (citation modified). The reviewing court may "reverse and remand a determination by the Commissioner with instructions to calculate and award benefits," but only when it is "clear from the record that a claimant is entitled to benefits." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). An "automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), *as amended*, (January 25, 2018). When "[1] the record before the agency does not support the agency action, . . . [2] the agency has not considered all relevant factors, or . . . [3] the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

The Court is mindful that, in the 13 years since Plaintiff filed her applications for benefits, the case has come before three ALJs and the District Court, and Plaintiff has been examined more than ten times by treating and examining providers. Nevertheless, none of the treating and consultative physicians had an opportunity to consider the fact that Plaintiff has worked full-time since 2021. It is therefore unclear whether Plaintiff is entitled to benefits, or may have properly been entitled to benefits between 2013 and 2021. Further development of the record is necessary to allow treating and/or consultative physicians to reassess Plaintiff's abilities and limitations in light of her recent employment and to allow Plaintiff to submit additional medical records as appropriate. Remand is also appropriate to allow the ALJ to reassess Plaintiff's credibility upon consideration of the updated evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS this action for further proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: August 13, 2026

Noël Wise
United States District Judge